Our final case for this morning is Cruz-Velasco v. Attorney General Garland, 21-16-42. And we will begin in the courtroom with Ms. Valdini-Potterman. Good morning, Your Honors. May it please the Court. My name is Maria Valdini-Potterman, and I represent Petitioner Francisco Cruz-Velasco. Petitioner Cruz comes before this Court this morning seeking review of the Board of Immigration Appeals' denial of his motion to reopen removal proceedings based on new evidence that was presented. Petitioner Cruz is a single father. His partner died 14 days after the birth of his second U.S. citizen son in 2004. Mr. Cruz raised his two sons in the rural area of Sparta, Wisconsin. He previously had applied for cancellation of removal before the Immigration Court, and his application was denied in part because of two convictions for drunk driving. Those were both Class U misdemeanors under Wisconsin law. Can I ask if you are challenging either the presumption created by a matter of Castillo-Perez or the manner in which that presumption could be rebutted? Yes, Your Honor. We are challenging that specifically. And with respect to the rebuttable presumption, the Board did not actually consider all of the evidence regarding good moral character that was in the record. For example, with respect to the good moral character, it did not consider the time that had passed since the second DUI offense had been committed. The second DUI offense was committed in 2016, and he pled to it in 2018. He was sober between 2016 and 2018 when his trial was held before the Immigration Court. We've submitted additional evidence, including affidavits from his sons, that he had not been drinking in the time from 2016 to 2021. But do we have jurisdiction to entertain this? I mean, this has become a snarled area, I will say, with Patel and with, you know, the various cases the Supreme Court has come down with, Lesbria, Guerrero-Lesbria. So why isn't that assessment of good moral character one of those things, at a bare minimum, that we would substantially defer to the agency on, if not defer 100% as a question of committed-to-agency discretion? Yes, Your Honor. So the issue of good moral character is a statutory requirement under 8 U.S.C. Section 1229B, subparens B, subparens 1. So that is the statute that lays out what are the requirements of eligibility for cancellation of removal. And one of the requirements listed there is 10 years of good moral character preceding the decision in the final decision in the case. Because good moral character is listed as a statutory requirement, we submit that. That takes it out of the other jurisdictional bars that have been debated back and forth, as this court just acknowledged. You think it puts it under CUCANA? Yes, Your Honor. It would put it under CUCANA under the Supreme Court's decision, which had reversed this court's decision. It is a statutory requirement. And so in order to determine whether or not Petitioner met that statutory requirement requires that all of the evidence be considered in making the determination regarding good moral character. Now, the rebuttable presumption that the Attorney General laid out in matter of Castillo-Perez says there's a rebuttable presumption that you cannot demonstrate good moral character if you have been convicted of multiple drunk-driving offenses. But that you can rebut that presumption. And we submit, Your Honor, that he did rebut the presumption. But even Castillo-Perez himself could not rebut the presumption. And he was a veritable angel by the time that AG was reviewing his case. He was sober even longer, if I recall, than Mr. Cruz-Velasco. So how – even if we did have jurisdiction, and even if we looked at Castillo-Perez, how does Castillo-Perez help Mr. Cruz-Velasco? Your Honor, Castillo-Perez does not directly help Mr. Cruz-Velasco. The challenge here is what would necessarily demonstrate that you've rebutted the presumption? Well, that's why I asked what I did because I have the impression, looking at the kinds of things the Board has been saying about the rebuttal, is that it's illusory, that it doesn't matter if you're an angel, it doesn't matter if you're the second coming of Christ or whatever you may be, that since you can't rebut it by showing that you have rehabilitated yourself, you can't rebut it by showing good deeds, you can't – I don't know whether the government has any idea, and I'll ask Mr. Bocchini, how in the world this can be rebutted, but it's a little difficult for me to see. And, Your Honor, Petitioner agrees with that because he had done everything correctly since that. And just distinguishing a couple of cases of this court that the government cited as well, in Portillo, the Portillo-Rendon case, that case involved four different drunk driving convictions, multiple other criminal convictions, and traffic convictions. And a couple of the drunk drivings postdated his rehabilitation, the formal rehabilitation period. In this particular case, Petitioner Cruz did not commit any further DUI cases after he went through the thorough alcohol assessment. And, in fact, two years prior to that in-depth alcohol assessment, which was included in the record in the motion to reopen, he had not drank at all. So it is an open question what more rehabilitation could be shown to ever overcome this rebuttable presumption. Right. Is it actually rebuttable is the question I would ask. But you would agree, though, that we've got some pretty naughty jurisdictional questions in front of us before we could even get to the point of evaluating the merits of this motion to reopen. Yes, Your Honor, I will agree on that. I do submit, though, that this court has made clear it has jurisdiction over the hardship issue, which is another issue that, in its response brief, the government has stated that they're not defending the board's decision regarding the hardship. But based on that, that hardship requirement is one of those other four statutory requirements under 1229BB1. And so this court has jurisdiction to review the hardship discretion, and we submit that because good moral character is one of those four statutory requirements, this court should also find jurisdiction to review the good moral character issue. Okay. If you'd like to save a little bit, that would be fine. I would, Your Honor. Thank you. All right. Thank you. So I'm not sure if I'm pronouncing it properly. Mr. Bocchini? Yes, Your Honor. May it please the court, Walter Bocchini, for the government, on behalf of the government. I would like to begin by touching on this court's jurisdiction, and it is the government's position that the decisions that are under review in this case, both the BIA decision in this case, and the Attorney General's decision in Castillo-Perez, are judgments regarding the granting of relief under the cancellation provision, and therefore falls under the discretionary review bar at 8 U.S.C. 12282B1. Given that, of course, the court does retain jurisdiction under the limited review provision for constitutional claims and questions of law. But as with respect to the Attorney General's decision, the only viable question of law the petitioner could have raised in his brief was that the Attorney General acted outside the scope of his authority. But it's the government's position that the petitioner did not even raise that much in the brief. Let me ask you, though. I mean, I'm worried about Castillo-Perez. Not so much if there were really an actual rebuttable presumption, if there are multiple DUIs, multiple meaning two or more. That's fine with me, too. But I have spent a lot of time looking at this, and the government's view is that it isn't a presumption. The government's view is that it's a hard and fast rule, that if you have two DUIs, you're done. Nothing that the government has pointed to would suffice to rebut that presumption, nothing. There is no showing an applicant could make that would get over it, and that seems to go too far to me. It seems to create a rule of law that's not in the statute. Well, Your Honor, the Attorney General went out of his way in Castillo-Perez to explain that this is a rebuttable presumption. But it isn't, though. I mean, can't we look realistically? Because you can't rebut it by showing rehabilitation. You can't rebut it by showing, you know, that you haven't had a drop to drink for six years. You know, there are lots of nos, and I'm looking for the yeses. How do you think this actually could be rebutted? Well, Your Honor, obviously it would be speculative on my part to say how it could be rebutted. You don't want the set to be zero of cases in which it's rebutted. That's really not, that goes beyond the authority of the Attorney General. Your Honor, again, this is such an open-ended determination of whether somebody has good moral character. There could be endless possibilities of how it could be rebutted. Again, I'm speculating here, but there could be issues with the convictions themselves. There could be extenuating circumstances on how it happened. There could be other aspects of the applicant's moral character that could somehow overcome it. I mean, but the bottom line is that- Can you think of a single case since Castillo-Perez, the 2019 decision, has come down in which this presumption has been rebutted? I do not, Your Honor, but then we wouldn't see them. If the immigration judges will find that it's been rebutted and grants cancellation of removal, it would not make its way up to the courts of appeals. So I can't say that just because we can't find a case on the record doesn't mean that one doesn't exist. And it is within the discretion of the immigration judges to make those assessments. And a good moral character is a subjective determination that's going to come down on how the individual making that determination falls on the line of principles. And if it were an open-ended discretionary process, such as the one you're hypothesizing, maybe that's one thing. But if it's just following rigid, hard, and fast rules, two DUIs, you're done. That strikes me as a different proposition. I understand, Your Honor. Again, keep in mind that it should be a difficult presumption to rebut because we're talking about a limited time period. If somebody has committed two DUIs in a limited time period, 10 years for purposes of cancellation of removal, it's going to be difficult for them to rebut. I don't disagree with that. But to say that it's not rebuttable, the Attorney General went out of his way to say that it is rebuttable, and we should take the Attorney General on his word on that. Now, again, can I point to a case? No, but the cases wouldn't arise to the courts of appeals if they did. And it's still within the discretion of the immigration judges to make that assessment. Petitioner in this case presents some positive factors, and I cannot say that an immigration judge wouldn't have reached an opposite conclusion. I will note this, that the immigration judge here, even before Castillo-Perez, had already denied cancellation of removal on a lack of criminal character finding based on the two DUIs. So, I mean, obviously it's going to be very difficult to rebut, even before Madara-Castillo-Perez, and it continues to be so now. And it should be, in light of the fact that we're looking at it, not necessarily a person's life here. We're looking at what they have done in the last 10 years that are relevant for cancellation of removal. And where they have multiple DUIs in there, it will be difficult. But that's, again, the Attorney General did say that it is a rebuttable presumption. Okay. Let me ask you this. Given that you don't defend the board's decision on hardship, are you conceding that we have judicial review of that determination? Your Honor, yes. The Areola case says that the court has jurisdiction to review. So, we obviously wish to preserve the argument that Areola was wrongly decided. But that's not the issue in this case. We're dealing with a different area here. We're dealing with good moral character, and good moral character is different. Hardship, there is an express statutory standard, exception to extremely unusual hardship, which the agency has issued published decisions on. Matter of Monreal, matter of Venezuela, and matter of Resinas. Two of those denying relief, one of them granting relief. So, set parameters where there is a set standard, much more set standard for review under the Guerrero formulation, application of law to indisputed facts. I have trouble drawing such a crisp line between the two. It seems to me hardship looks an awful lot like good moral character. It's a multifaceted question calling for, you know, exercise of discretion, lots of things. I agree that they are similar, but there is a difference here, not necessarily in kind, but in degree. Good moral character, what is, when, the determination of what is good in moral character, that's going to come down to a much more, to the individual who's making that assessment. In hardship, again, because it can be guided. Well, just because it guides, can be guided through the agency decisions where we have two additional decisions saying yes, one saying, I'm sorry, opposite. Two saying no, one saying yes. It's been applied now for almost 20 years in the agency. So, there is a more concrete standard to apply. Good moral character lacks any statutory standard, lacks any decisions that are making it more, that are defining term more. As the attorney general said in Maduro Castillo Perez, the definition is a negative one. It says what those that are here are the ways that good moral character cannot be established through the per se rules. And then it says it can be established through, by other reasons that being extremely broad, even we would argue more broader than the exception, an extremely unusual hardship standard that has been developed by the agencies. And if I could go back again to this touch on the issue of the, of jurisdiction, as far as, as far as Guerrero, one of the points that we would like to emphasize is that other courts of  facts, even before Guerrero, being primarily the ninth circuit and the third circuit, and even before Guerrero, they said, no, application of law to facts does not extend the hardship. That hardship is something that stands apart. Now after Guerrero, both of those courts have issued subsequent decisions that reaffirmed that the applicant, that, and that being Mary Mo with a third circuit. And in one case that's not in the briefs, I believe it's Martinez in the ninth circuit, have reaffirmed the application of lots of facts does not, does not extend that far. You have to agree that it's a complex area because the other thing you could say about Guerrero is that it disapproved the very rigid approach that this court had been taking, that anything, but almost a hypothetical legal question, was a fact question. And so we had too broad a set of things that were carved out from review. Guerrero said, no, you know, their applications of law to undisputed facts that's reviewable. That's a quote unquote, you know, 1252 A1D sort of situation. Yes, Your Honor. Certainly this court's had a more, had a narrow review of the jurisdictional review bar. And we can't just ignore the Supreme Court and say, well, we're just going to go back to what we were doing. Well, again, I would point to- General Guerrero and Patel, I will just throw in there. Patel dealt ultimately with a credibility determination, which is obviously fact. That's certainly true, but I would say that Guerrero reaffirmed that the, that the discretionary review bar should still continue to have effect, has continued to have bite. It can't be written out of the books by simply as the Guerrero-Lasgrilla silence on whether this formulation applies to discretionary determinations. And if I can just make one last point, I see my time has expired. I would also point out that Guerrero-Lasgrilla, the Supreme Court explained that the limited review bar was enacted in response to St. Cyr to provide a baseline level of protection that was available under habeas. And under habeas, discretionary reviews were not, were not- Okay. Okay. Thank you, Your Honor. Thank you very much, Mr. Bocchini. Ms. Baldini-Poderman. Your Honors, with respect to the government's argument that we've had 20 years now of case law regarding the exceptional, extremely unusual hardship standard, the requirement of the issue of good moral character, though, is decades more longer in scope. And under the issues for good moral character, the government is correct that the statute under 1101F lays out what good moral character is not. But that does not then say that you cannot ever rebut a presumption or that the court could not find good moral character based on all the other factors presented in the case. And in this case in particular, why this case falls under the 1252A2D section, that is the carve-out exception, is that that combines, that savings clause combines with the statute under 1229BB1, which again is the statutory requirements listed out. So the government's argument that you can read out the statutory requirements should be found not to be worthy of stripping this court of jurisdiction. As this court has noted, if there's no way that you could ever rebut the two DUIs and you're out, then it's really hard to see how you could ever win at the immigration court level if someone has two DUIs. Even if they were saying nine years in the past, the immigration court would then still be constrained by the two DUIs and you're knocked out of eligibility. With respect again to this particular case, the hardship facts that were presented in the motion to reopen were not in any way disputed by the government in its response brief before the board. And so those should be seen as undisputed facts in the record. And regarding the other issues of why the board found that he had not demonstrated what the IEP or the individualized plan was, that was in the record before the board. It was explained. He also, Petitioner also explained. You need to wrap up. Yes. Thank you, Your Honor. Just really quickly. He also had explained why he had not previously disclosed his diabetes diagnosis to his prior counsel. And as we pointed out in the motion to reopen, diabetes and COVID-19 in Mexico is a very serious threat to his life. Thank you. All right. Thank you very much. Thanks to both counsel. We will take the case under advisement and the court will stand in recess.